**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

AARON GOODMAN,

      Plaintiff,

v.

PING IDENTITY HOLDING CORP.
MICHAEL FOSNAUGH,
ROD ALIABADI,
ANIL ARORA,
DAVID BREACH,
ANDRE DURAND,
DIANE GHERSON,
PAUL E. MARTIN,
JOHN MCCORMACK,
YANCEY L. SPRUILL,
MARTIN TAYLOR,
VIKRAM VERMA,

      Defendants.

---

**COMPLAINT AND JURY DEMAND
FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

---

Plaintiff, Aaron Goodman ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Ping Identity Holding Corp. ("Ping" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Project Polaris Holdings, LP ("Parent"), an affiliate of Thoma Bravo, L.P., via merger vehicle Project Polaris Merger Sub, Inc. ("Merger Sub" and collectively with Parent and Thoma Bravo, L.P., "Thoma Bravo"), as a result of an unfair process, and to enjoin an upcoming vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 3, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Ping will become an indirect wholly-owned subsidiary of Thoma Bravo. In consideration for the proposed merger, Ping shareholders will have their shares cancelled and receive $28.50 per share in cash, without interest.

3.      Thereafter, on September 2, 2022, Ping filed a Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction. On September 16, 2022, Ping filed a Definitive Proxy Statement on Schedule DEFM14A ("the "Definitive Proxy Statement" and collectively with the Preliminary Proxy Statement, "Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate

benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, on September 16, 2022, Defendants caused to be filed the materially deficient Proxy Statement. The Proxy Statement is materially deficient and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Ping, provided by Ping management to the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Goldman Sachs and provided to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**<u>PARTIES</u>**

7.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Ping stockholder.

8.      Defendant Ping Identity Holding Corp. offers intelligent identity solutions for the enterprise in the United States and internationally. Ping is incorporated under the laws of the State of Delaware and has its principal place of business at 1001 17th Street, Suite 100, Denver, CO 80202. Shares of Ping common stock are traded on the New York Stock Exchange under the symbol "PING".

9.      Defendant Michael Fosnaugh ("Fosnaugh") has been a Director of the Company at all relevant times.

10.     Defendant Rod Aliabadi ("Aliabadi") has been a Director of the Company at all relevant times.

11.     Defendant Anil Arora ("Arora") has been a director of the Company at all relevant times.

12.     Defendant David Breach ("Breach") has been a director of the Company at all relevant times.

13.     Defendant Andre Durand ("Durand") has been a director of the Company at all relevant times.  In addition, Durand serves as the Company's Chief Executive Officer ("CEO").

14.     Defendant Diane Gherson ("Gherson") has been a director of the Company at all relevant times.

15.     Defendant Paul E. Martin ("Martin") has been a director of the Company at all relevant times.

16.     Defendant John McCormack ("McCormack") has been a director of the Company at all relevant times.

17.     Defendant Yancey L. Spruill ("Spruill") has been a director of the Company at all relevant times.

18.     Defendant Martin Taylor ("Taylor") has been a director of the Company at all relevant times.

19.     Defendant Vikram Verma ("Verma") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 9 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Party Thoma Bravo, L.P. is a leading private equity firm with over $114 Billion in assets under management.

22.     Defendants Parent and Merger Sub are wholly owned subsidiaries of Thoma Bravo created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, have extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

26.     Ping Identity Holding Corp. offers intelligent identity solutions for the enterprise in the United States and internationally. Its Ping Intelligent Identity platform provides access to cloud, mobile, Software-as-a-Service, and on-premise applications with customers, workforce, and partners. The company's platform offers secure single sign-on; multi-factor authentication; access security; directory solution; dynamic authorization; risk management; identity verification; API intelligence; orchestration; and fraud detection. It also provides professional and customer support services. The company sells its solutions through a direct sales force. Its customers include enterprises in Fortune 100, U.S. banks, healthcare companies, aerospace companies, auto

manufacturers, and North American retailers. The company was formerly known as Roaring Fork Holding, Inc. and changed its name to Ping Identity Holding Corp. in August 2019. Ping Identity Holding Corp. was incorporated in 2016 and is headquartered in Denver, Colorado.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the May 4, 2022 Earnings Call announcing its 2022 Q1 financial results, the Company highlighted a 23% growth in Revenue.

28.     Speaking on these positive results, CEO Defendant Durand commented on the Company's positive results as follows, "We started the year strong, despite a volatile market and geopolitical environment. In addition to driving continued ARR and revenue growth, we also announced important partnerships in the quarter aimed at extending our services to sectors in need and improving our footprint with channel partners. Additionally, with some early sales momentum related to the February launch of PingOne DaVinci, we're continuing to build our robust platform."

29.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Ping.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Ping to enter into the Proposed Transaction without providing requisite information to Ping stockholders such as Plaintiff.

***The Flawed Sales Process***

31.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     Though Proxy Statement explains that a "Transaction Committee" was formed to evaluate the Proposed Transaction, it fails to disclose the powers the committee had in doing so, including whether the Transaction Committee was empowered to veto a transaction not in the best interest of common shareholders.

33.     Moreover, the Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and Thoma Bravo and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

35.     On August 3, 2022, Ping and Thoma Bravo issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **DENVER, August 3, 2022 /PRNewswire/ --** Ping Identity (NYSE: PING), provider of the Intelligent Identity solution for the enterprise, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, for $28.50 per share in an all-cash transaction valued at an Enterprise Value of approximately $2.8 billion. The offer represents a premium of approximately 63% over Ping Identity's closing share price on August 2, 2022, the last full trading day prior to the transaction announcement, and a premium of 52% over the volume weighted average price of Ping Identity stock for the 60 days ending August 2, 2022.
>
> "This compelling transaction is a testament to Ping Identity's leading enterprise identity solutions, our talented team, and our outstanding customers and partners," said Andre Durand, Ping Identity's Chief Executive Officer. "Identity security and frictionless user experiences have become essential in the digital-first economy and Ping Identity is better positioned than ever to capitalize on the growing demand

from modern enterprises for robust security solutions. We are pleased to partner with Thoma Bravo, which has a strong track record of investing in high-growth cloud software security businesses and supporting companies with initiatives to turbocharge innovation and open new markets."

"A tectonic shift is occurring in intelligent identity solutions for the enterprise," said Seth Boro, a Managing Partner at Thoma Bravo. "Ping Identity's unique capabilities and strong position in enterprise identity security make it a great platform to deliver customer outcomes, expand into new use cases and support digital transformations. We are highly impressed with the talented Ping Identity team and look forward to working collaboratively in the years to come."

"Ping Identity is a leader in intelligent identity solutions for the enterprise and is well-positioned to capitalize on the significant opportunities in the $50 billion Enterprise Identity security solutions area," said Chip Virnig, a Partner at Thoma Bravo. "Our shared commitment to growth and innovation, combined with Thoma Bravo's significant security software investing and operational expertise, will enable Ping Identity to accelerate its cloud transformation and delivery of industry leading identity security experiences for the customers, employees and partners of large enterprises worldwide."

***Potential Conflicts of Interest***

36.     The breakdown of the benefits of the deal indicate that Ping insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Ping.

37.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Proxy Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| Name and Address of Beneficial Owner | Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
|---|---|---|
| Five Percent Stockholders: | | |
| Vista Funds | 8,335,350 | 9.7% |
| Senvest Management | 4,415,361 | 5.1% |
| Named Executive Officers and Directors: | | * |
| Andre Durand | 1,420,628 | 1.6% |
| Raj Dani | 285,048 | * |
| Shalini Sharma | — | * |
| Rod Aliabadi | — | * |
| Anil Arora | — | * |
| David A. Breach | — | * |
| Michael Fosnaugh | — | * |
| Diane Gherson | 7,209 | * |
| Paul Martin | 8,373 | * |
| John McCormack | 52,507 | * |
| Yancey L. Spruill | 23,996 | * |
| Martin A. Taylor. | — | * |
| Vikram Verma | 2,630 | * |
| All executive officers and directors as a group (13 persons) | 1,800,391 | 2.0% |

38.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Proxy Statement fails to provide an accounting of the amounts of equity awards owned by Company insiders nor of the specific amount

of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction:

| Ping Identity Executive Officer | Options Held (#)(1) | Options Held ($) | Number of Unvested PSUs Held (#)(2) | Unvested PSUs Held ($) | Number of Unvested RSUs Held (#)(3) | Unvested RSUs Held ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Andre Durand | 1,225,750 | $25,207,315 | 137,175 | $3,909,488 | 407,538 | $11,614,833 | $40,731,636 |
| Raj Dani | 234,105 | 4,455,834 | 62,872 | 1,791,852 | 421,271 | $12,006,224 | 18,253,910 |
| Shalini Sharma | — | — | 22,863 | 651,596 | 164,106 | $ 4,677,021 | 5,328,617 |
| B. Kristian Nagel | 278,113 | 4,188,382 | 62,872 | 1,791,852 | 421,271 | 12,006,224 | 17,986,458 |
| Bernard Harguindeguy | — | — | — | — | — | — | — |

39.     Moreover, certain employment agreements with certain Ping executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff, as follows:

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Continued Health Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Andre Durand | 318,750 | 40,731,636 | 24,000 | 41,074,386 |
| Raj Dani | 500,000 | 18,253,910 | 0 | 18,753,910 |
| B. Kristian Nagel | 0 | 17,986,458 | 0 | 17,986,458 |
| Bernard Harguindeguy | 75,000 | 0 | 4,402 | 79,402 |

40.     The Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. Thus, while the Proposed Transaction is not in the best interests of Ping, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Proxy Statement**

42. On September 16, 2022, the Ping Board and Thoma Bravo caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

43. Specifically, the Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

a. Specific information regarding the powers of the Transaction Committee, including whether the committee was empowered to veto a transaction not in the best interests of common shareholders;

b. Whether the confidentiality agreements entered into by the Company with Thoma Bravo differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

10

potentially interested third parties throughout the sales process, including Thoma Bravo, would fall away; and

d. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Ping's Financial Projections*

44. The Proxy Statement fails to provide material information concerning financial projections for Ping by Ping management to the Board and Goldman Sachs and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45. The Proxy Statement should have, but fails to provide, certain information in the projections that Ping management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

46. With regard to the *November Strategic Plan* Projections prepared by Ping Management, the Proxy Statement fails to disclose material line items for the following metrics for years 2021E-2024E:

a. Annual Recurring Revenue, including all underlying necessary metrics, adjustments, and assumptions used to compute this item;

47. With regard to the *June Projections* prepared by Ping Management, the Proxy

Statement fails to disclose material line items for the following metrics for years 2022E-2036E:

    a.  Annual Recurring Revenue, including all underlying necessary metrics, adjustments, and assumptions used to compute this item;

    b.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions necessary to compute this item, including specifically: net cash provided by operating activities, purchases of property and equipment, capitalized software development costs, and cash paid for interest.

48.    With regard to the *Updated Projections* prepared by Ping Management, the Proxy Statement fails to disclose material line items for the following metrics for years 2022E-2036E:

    c.  Annual Recurring Revenue, including all underlying necessary metrics, adjustments, and assumptions used to compute this item;

    d.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions necessary to compute this item, including specifically: net cash provided by operating activities, purchases of property and equipment, capitalized software development costs, and cash paid for interest.

49.    With regard to the *Tax Attributes Forecasts* prepared by Ping Management, the Proxy Statement fails to disclose material line items for the following metrics for years 2022E-2036E:

    a.  A definition for the Tax Shield from NOLs, as well as all underlying inputs, metrics, and assumptions used to compute the metric; and

    b.  A definition for the Tax Shield from R&D Credits, as well as all underlying

inputs, metrics, and assumptions used to compute the metric.

50.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

53.     In the Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54.     With respect to the *Illustrative Discounted Cash Flow Analysis* section, the Proxy Statement fails to disclose the following:

        a.  The specific inputs and assumptions used to determine the utilized discount rate range of 11.5% to 13.5%;

b.  The Company's weighted average cost of capital utilized;

c.  The illustrative terminal values for the Company calculated;

d.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.0% to 3.0%;

e.  The specific inputs and assumptions used to determine the utilized terminal value to NTM unlevered free cash flow (excluding stock-based compensation) multiple range of 6.7x to 9.7x;

f.  The Company's target capital structure weightings utilized;

g.  The cost of long-term debt for the Company utilized;

h.  The after-tax yield on permanent excess cash, if any, for the Company utilized;

i.  The future applicable marginal cash tax rate for the Company utilized;

j.  The beta for the Company utilized;

k.  The specific "certain financial metrics for the United States financial markets generally" utilized;

l.  The Company's net debt as of June 30, 2022;

m.  The Company's net present value of cash tax savings from net operating loss carryforwards and R&D credit carryforwards; and

n.  The number of fully diluted outstanding shares of Company common stock as of August 1, 2022.

55.    With respect to the *Illustrative Present Value of Future Share Price Analysis* section, the Proxy Statement fails to disclose the following:

a.   The implied enterprise values for the Company as of December 31 of each respective year analyzed;

b.   The specific inputs and assumptions used to determine a EV / NTM Revenue range of 5.5x to 7.5x;

c.   The amount of the Company's forecasted net debt for each of the fiscal years 2022 to 2024;

d.   The illustrative equity values for the Company as of December 31 for each of the fiscal years 2022 to 2024;

e.   The number of year end fully-diluted outstanding shares of Common Stock for the Company projected for years 2022-2024;

f.   The inputs, metrics, and assumptions used to determine an illustrative discount rate of 12.9%; and

g.   The beta for the Company.

56.     With respect to the *Selected Transactions Analysis* section, the Proxy Statement fails to disclose the following:

a.   The value for each selected transaction compared;

b.   The date on which each selected transaction closed;

c.   The specific metrics for each selected Transaction;

d.   The inputs and assumptions used to determine a reference range of illustrative EV / NTM Revenue multiples of 5.9x to 8.9x; and

e.   The number of fully-diluted outstanding shares of Ping Common Stock.

57.     With respect to the *Premiums Paid Analysis* section, the Proxy Statement fails to disclose the following:

      a.   The Companies involved in each transaction compared;

      b.   The closing date of each transaction compared;

      c.   The specific value of each transaction;

      d.   The inputs, metrics, and assumptions used to determine a reference range of illustrative premia of 18% to 44%.

58.     With respect to the *Selected Public Company Comparables* section, the Proxy Statement fails to disclose the following:

      a.   The specific EV/NTM Revenue Multiple reference range used as well as the inputs, metrics and assumptions used to determine the range.

59.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

60.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Ping Identity stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

61.     Plaintiff repeats all previous allegations as if set forth in full herein.

62.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

63.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

64.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

65.    The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

66.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

67.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

68.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

69.     Plaintiff repeats all previous allegations as if set forth in full herein.

70.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

71.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy

Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

72.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Ping's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

73.     The Individual Defendants acted as controlling persons of Ping within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Ping to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Ping and all of its employees.  As alleged above, Ping is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise comply with the Exchange Act and disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 23, 2022                    **BRODSKY & SMITH, LLC**

                                    By:      */s/ Marc L. Ackerman*
                                             Marc L. Ackerman
                                             Two Bala Plaza, Suite 805
                                             Bala Cynwyd, PA 19004
                                             Phone: (610) 667-6200
                                             Fax:    (610) 667-9029
                                             Email:  mackerman@brodskysmith.com

                                             *Counsel for Plaintiff*